428 F.2d 1093
 ENVIRONMENTAL DEFENSE FUND, INCORPORATED, et al., Petitioners,
v.
Clifford M. HARDIN, Secretary of Agriculture, United States Department of Agriculture, Respondents,
Izaak Walton League of America, Intervenor.
 No. 23813.
 United States Court of Appeals, District of Columbia Circuit.
 May 28, 1970.
 
 COPYRIGHT MATERIAL OMITTED Messrs. James W. Moorman and Charles R. Halpern, Washington, D. C., were on the motion for petitioners and intervenor; Mr. Edward Berlin, Washington, D. C., was also on the motion for petitioner Environmental Defense Fund, Inc.
 Messrs. Charles W. Bucy, Asst. Gen. Counsel, Department of Agriculture, and Alan S. Rosenthal, Attorney, Department of Justice, were on the motion for respondents.
 Messrs. John L. Murphy and Howard S. Epstein, Attorneys, Department of Justice, and Paul M. Donovan, Attorney, Department of Agriculture, also entered appearances for respondents.
 Before BAZELON, Chief Judge, and ROBINSON, Circuit Judge, in chambers.
 BAZELON, Chief Judge:
 
 
 1
 This case requires the court to consider under what circumstances there may be a judicial remedy for the failure of an administrative agency to act promptly, and what form that remedy may take.
 
 
 2
 The shipment of pesticides in interstate commerce is regulated by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), which is administered by the Secretary of the Department of Agriculture.[1] The Act requires pesticides and other "economic poisons" to carry labels bearing certain information, including any warnings necessary to prevent injury to people. A pesticide which fails to comply with the labelling requirement, or which cannot be rendered safe by any labelling, is "misbranded,"[2] and the Secretary must refuse or cancel its registration as an economic poison approved for shipment in interstate commerce.[3]
 
 
 3
 The statute establishes an elaborate procedure by which a registration may be cancelled, that begins when the Secretary issues a notice of cancellation to a registrant.[4] Since the statutory procedures can easily occupy more than a year, the statute also gives the Secretary the power to suspend a registration immediately if he finds such action "necessary to prevent an imminent hazard to the public." Such an interim suspension triggers an expedited version of the procedure that can lead to cancellation.
 
 
 4
 Petitioners here are five organizations engaged in activities relating to environmental protection.[5] On the basis of extensive evidence of the harmful effects of the pesticide DDT on human, plant, and animal life, they filed a petition with the Secretary of the Department of Agriculture requesting (1) the issuance of notices of cancellation for all economic poisons containing DDT, and (2) the suspension of registration for all such products pending the conclusion of cancellation proceedings. The Secretary issued notices of cancellation with respect to four uses of DDT, solicited comments concerning the remaining uses, and took no action on the request for interim suspension.[6] Petitioners filed this appeal, seeking to compel the Secretary to comply with their request.[7]
 
 
 5
 The Secretary moved to dismiss for lack of jurisdiction, asserting that petitioners lack standing to complain of his failure to act, that there is no final order ripe for review, that any final order would nevertheless be unreviewable because it involves questions committed by law to agency discretion, and that any available relief can be afforded only by the district court on a writ of mandamus, and not by the court of appeals. Since we can accept none of those conclusions, the motion to dismiss must be denied, and the case remanded to the Secretary to provide this court with the record necessary for meaningful appellate review.[8]
 
 I. STANDING
 
 6
 The legislative history of the FIFRA refutes respondents' contention that only registrants and applicants for registration have standing to challenge the Secretary's determinations under the Act. The statute affords a right of review to "any person who will be adversely affected" by an order.[9] An amendment that would have limited review to registrants and applicants was considered and rejected.[10] The "zone of interests" sought to be protected by the statute includes not only the economic interest of the registrant but also the interest of the public in safety.[11] Thus petitioners have standing if they allege sufficient injury in fact to create a constitutionally justiciable case or controversy.[12]
 
 
 7
 The injury alleged by petitioners is the biological harm to man and to other living things resulting from the Secretary's failure to take action which would restrict the use of DDT in the environment. Numerous scientific studies and several reports to government agencies have concluded that DDT has a wide spectrum of harmful effects on nontarget plant and animal species; it increases the incidence in animals of cancer and reproductive defects; and its residues persist in the environment and in the human body long enough to be found far in time and space from the original application.[13]
 
 
 8
 Consumers of regulated products and services have standing to protect the public interest in the proper administration of a regulatory system enacted for their benefit.[14] The interest asserted in such a challenge to administrative action need not be economic.[15] Like other consumers, those who "consume" — however unwillingly — the pesticide residues permitted by the Secretary to accumulate in the environment are persons "aggrieved by agency action within the meaning of a relevant statute."[16] Furthermore, the consumers' interest in environmental protection may properly be represented by a membership association with an organizational interest in the problem.[17]
 
 
 9
 On the basis of petitioners' uncontroverted allegations, it appears that they are organizations with a demonstrated interest in protecting the environment from pesticide pollution. Therefore they have the necessary stake in the outcome of a challenge to the Secretary's inaction to contest the issues with the adverseness required by Article III of the Constitution.
 
 II. REVIEWABILITY
 
 10
 Related to the question of standing is respondents' argument that the decision to suspend the registration of a pesticide as an "imminent hazard" is committed by statute to unreviewable administrative discretion.[18] Even if petitioners have standing to seek review of some administrative decisions under the FIFRA, respondents contend that they cannot seek review of a decision on emergency suspension. Preclusion of judicial review is not lightly to be inferred, however; it requires a showing of clear evidence of legislative intent.[19] That evidence cannot be found in the mere fact that a statute is drafted in permissive rather than mandatory terms.[20] Although the FIFRA provides that the Secretary "may" suspend the registration of an economic poison that creates an imminent hazard to the public, we conclude that his decision is not thereby placed beyond judicial scrutiny.
 
 III. RIPENESS
 
 11
 The main thrust of respondents' argument is that the Secretary has issued no final order reviewable in this court.[21] Petitioners asked the Secretary to take certain actions; he complied in part, and indicated that he was considering further compliance. Since he has neither granted nor denied much of the relief requested, respondents contend that his response to petitioners' request has not yet ripened into a reviewable order.
 
 
 12
 An order expressly denying the request for suspension or for cancellation would clearly be ripe for review.[22] The doctrines of ripeness and finality are designed to prevent premature judicial intervention in the administrative process, before the administrative action has been fully considered, and before the legal dispute has been brought into focus.[23] No subsequent action can sharpen the controversy arising from a decision by the Secretary that the evidence submitted by petitioners does not compel suspension or cancellation of the registration of DDT. In light of the urgent character of petitioners' claim, and the allegation that delay itself inflicts irreparable injury, the controversy is as ripe for judicial consideration as it can ever be.
 
 
 13
 Respondents suggest that the district court is the proper forum for any review that may be available, characterizing the petition as one for relief in the nature of mandamus. We find it unnecessary to decide whether petitioners could have obtained relief from the district court, since the availability of that extraordinary remedy for the failure of an officer to perform his statutory duty need not bar statutory appellate review of the failure to act, when exigent circumstances render it equivalent to a final denial of petitioners' request.[24] There is some authority to the effect that only a trial court is capable of reviewing orders issued without benefit of formal factfinding based on a record.[25] That view has been criticized, however, for dividing between two courts the review of the various orders involved in a single administrative proceeding.[26] Whatever its continuing vitality, that line of authority is especially inappropriate here, where the facts in issue lie peculiarly within the special competence of the Secretary. The district court could do no more than remand to the Secretary, as we do here; there seems to be no reason to inject another tribunal into the process.[27]
 
 
 14
 It remains for us to determine whether, in the circumstances of this case, administrative inaction is the equivalent of an order denying relief. Clearly relief delayed is not always equivalent to relief denied. There are many factors that result in delay, and a court is in general ill-suited to review the order in which an agency conducts its business.[28] But when administrative inaction has precisely the same impact on the rights of the parties as denial of relief, an agency cannot preclude judicial review by casting its decision in the form of inaction rather than in the form of an order denying relief.[29]
 
 
 15
 A. With regard to the request for interim suspension of the registration of DDT, we agree that inaction is tantamount to an order denying suspension. The suspension power is designed to protect the public from an "imminent hazard"; if petitioners are right in their claim that DDT presents a hazard sufficient to warrant suspension, then even a temporary refusal to suspend results in irreparable injury on a massive scale. The controversy over interim relief is ripe for judicial resolution, because the Secretary's inaction results in a final disposition of such rights as the petitioners and the public may have to interim relief.[30]
 
 
 16
 Nevertheless, meaningful appellate review of the refusal to suspend DDT's registration is impossible in the absence of any record of administrative action. The suspension decision is committed by statute to the Secretary; the role of the court is merely to ensure that he exercises his discretion within a reasonable time, and to ensure that his decision is supported by the record.[31] Therefore, we must remand the case to the Secretary, either for a fresh determination on the question of suspension, or for a statement of reasons for his silent but effective refusal to suspend the registration of DDT. If he persists in denying suspension in the face of the impressive evidence presented by petitioners, then the basis for that decision should appear clearly on the record, not in conclusory terms but in sufficient detail to permit prompt and effective review. In view of the emergency nature of the claim, we retain jurisdiction to permit respondents to provide us, within thirty days, with the record necessary for review.[32]
 
 
 17
 B. With respect to the request for notices of cancellation, we are more reluctant to equate a tentative and equivocal delay with an outright denial of the request. The Secretary has made a few feeble gestures in the direction of compliance with the request, and further action is apparently under consideration. But the statutory scheme of the FIFRA itself contemplates a lengthy inquiry into the conditions for the safe use of an economic poison before its registration may finally be cancelled. Since the issuance of cancellation notices merely triggers that administrative mechanism, it is questionable whether the Secretary may properly defer the decision to issue notices in order to engage in a preliminary inquiry not contemplated by the statute.[33]
 
 
 18
 At some point administrative delay amounts to a refusal to act, with sufficient finality and ripeness to permit judicial review. The present record does not permit us to determine whether that point has been reached here. On remand, the Secretary should either decide on the record whether to issue the remaining requested cancellation notices, or explain the reasons for deferring the decision still further. In light of that record, and in view of his disposition of the request for interim relief, the court will be in a better position to evaluate the impact of any further delay and decide whether judicial relief is appropriate.
 
 
 19
 Remanded for further proceedings in accordance with this opinion.
 
 
 
 Notes:
 
 
 [1]
 7 U.S.C. §§ 135-135k (1964)
 
 
 [2]
 The statutory labelling requirement at several points incorporates a substantive standard of product safety. For purposes of the FIFRA, an economic poison is misbranded, and its distribution in interstate commerce prohibited, if its label does not contain "directions for use which are necessary and if complied with adequate for the protection of the public," 7 U.S.C. § 135(z) (2) (c) (1964), and "a warning or caution statement which may be necessary and if complied with adequate to prevent injury to living man and other vertebrate animals, vegetation, and useful invertebrate animals." 7 U.S.C. § 135(z) (2) (d) (1964). An insecticide is also misbranded if "when used as directed or in accordance with commonly recognized practice it shall be injurious to living man or other vertebrate animals, or vegetation, except weeds, to which it is applied, or to the person applying such economic poison." 7 U.S.C. § 135(z) (2) (g) (1964)
 
 
 [3]
 The interstate distribution of an economic poison that is unregistered, misbranded, or otherwise out of compliance with the statute is a misdemeanor, 7 U.S.C. § 135f (1964), and the offending items are subject to confiscation. 7 U.S.C. § 135g (1964)
 
 
 [4]
 A registrant who receives a notice of cancellation may request the appointment of a special scientific advisory committee to study the matter. After the committee completes its independent study and submits its recommendations, the Secretary must make his determination. The registrant may then file objections and request a public hearing, after which the Secretary must make a new determination. 7 U.S.C. § 135b(c) (1964)
 
 
 [5]
 The original petition was filed by the Environmental Defense Fund, Inc. and the National Audubon Society, nonprofit New York corporations; the Sierra Club, a nonprofit California corporation; and the West Michigan Environmental Action Council, an unincorporated association. This court granted leave to intervene to the Izaak Walton League of America, an unincorporated association
 
 
 [6]
 See 34 Fed.Reg. 18827 (1969).
 
 
 [7]
 The Secretary of the Department of Health, Education, and Welfare also has an important role in pesticide regulation, under the Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301-392 (1964). That statute requires the Secretary to establish the maximum amounts of pesticide residues that will be tolerated in raw agricultural commodities shipped in interstate commerce. The two statutes are obviously inter-related, and petitioners are seeking action on DDT under both statutesSee Environmental Defense Fund, Inc. v. United States Dep't of HEW, 138 U.S. App.D.C. ___, 428 F.2d 1083.
 
 
 [8]
 This court initially deferred the motion to dismiss, for consideration with the merits of the case, setting an expedited schedule for briefs and argument. Respondents moved for reconsideration of the deferral order, and filed a brief addressing only the jurisdictional issue. Because appellate review on the merits would be difficult, if not impossible, without the kind of administrative record that is lacking here, we have decided to grant the motion to reconsider and to resolve the issues presented by the motion to dismiss without proceeding to the merits
 
 
 [9]
 7 U.S.C. § 135b(d) (1964)
 
 
 [10]
 Hearings on Regulation of Economic Poisons Before the Subcomm. on Department Oversight and Consumer Relations of the House Comm. on Agriculture, 88th Cong., 1st Sess. 49-51 (1963)
 
 
 [11]
 See the statutory language quoted at note 2supra; H.R.Rep. No. 313, 80th Cong., 1st Sess. 2-3 (1947).
 
 
 [12]
 Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)
 
 
 [13]
 See, e. g., U. S. Dep't of Health, Education, and Welfare, Report of the Secretary's Commission on Pesticides and Their Relationship to Environmental Health (1969).
 
 
 [14]
 Citizens for Allegan County, Inc. v. FPC, 134 U.S.App.D.C. 229, 238, 414 F.2d 1125, 1134 (1969); Office of Communication of the United Church of Christ v. FCC, 123 U.S.App.D.C. 328, 334-340, 359 F.2d 994, 1000-1006 (1966); Associated Industries of New York State v. Ickes, 134 F.2d 694 (2d Cir.), vacated as moot, 320 U.S. 707, 64 S.Ct. 74, 88 L.Ed. 414 (1943);see FCC v. Sanders Bros. Radio Station, 309 U.S. 470, 476-477, 60 S.Ct. 693, 84 L.Ed. 869 (1940); Scripps-Howard Radio, Inc. v. FCC, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942).
 
 
 [15]
 Office of Communication of the United Church of Christ v. FCC,supra note 14; Scenic Hudson Preservation Conf. v. FPC, 354 F.2d 608, 616 (2d Cir. 1965), cert. denied, Consolidated Edison Co. v. Scenic Hudson Preservation Conference, 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 540 (1966); Washington Dep't of Game v. FPC, 207 F.2d 391, 395 n. 11 (9th Cir. 1953); see Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 154, 90 S.Ct. 827 (1970).
 
 
 [16]
 That is the test of standing conferred by the Administrative Procedure Act, 5 U.S.C. § 702 (Supp. V, 1969). It is equivalent to the requirement that the complainant's interest fall within the zone of interests sought to be protected by the statuteSee Barlow v. Collins, 397 U.S. 159, 164-165, 90 S.Ct. 832, 25 L.Ed. 2d 192 (1970); Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 153-155, 90 S.Ct. 827 (1970).
 
 
 [17]
 See NAACP v. Button, 371 U.S. 415, 428, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); National Student Association v. Hershey, 134 U.S.App.D.C. 56, 73-74, 412 F.2d 1103, 1120-1121 (1969); United Federation of Postal Clerks, AFL-CIO v. Watson, 133 U.S.App.D.C. 176, 183-185, 409 F.2d 462, 469-471, cert. denied, Blount, Postmaster General v. United Federation of Postal Clerks, AFL-CIO, 396 U.S. 902, 90 S.Ct. 212, 24 L.Ed.2d 178 (1969); Citizens Ass'n of Georgetown v. Simonson, 131 U.S.App.D.C. 152, 403 F.2d 175 (1968), cert. denied, 3259 M Street, Inc. v. Citizens Ass'n of Georgetown, 394 U.S. 975, 89 S.Ct. 1454, 22 L. Ed.2d 755 (1969); MacArthur Liquors, Inc. v. Palisades Citizens Ass'n, 105 U.S. App.D.C. 180, 265 F.2d 372 (1959); and cases cited notes 14-15 supra.
 
 
 [18]
 See Administrative Procedure Act, 5 U.S.C. § 701(a) (2) (Supp. V, 1969); Curran v. Laird, 136 U.S.App.D.C. 280 286, 291, 420 F.2d 122, 128-133 (1969) (en banc).
 
 
 [19]
 Barlow v. Collins, 397 U.S. 159, 167, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); Abbott Laboratories v. Gardner, 387 U.S. 136, 140-141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); L. Jaffe, Judicial Control of Administrative Action 346 (1965)
 
 
 [20]
 Barlow v. Collins, 397 U.S. 159, 165-166, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970)
 
 
 [21]
 The FIFRA provides for judicial review "[i]n a case of actual controversy as to the validity of any order under this section." 7 U.S.C. § 135b(d) (1964)
 
 
 [22]
 Foti v. Immigration and Naturalization Service, 375 U.S. 217, 84 S.Ct. 306, 11 L. Ed.2d 281 (1963); Folkways Broadcasting Co. v. FCC, 126 U.S.App.D.C. 393, 379 F.2d 447 (1967); Isbrandtsen Co. v. United States, 93 U.S.App.D.C. 293, 211 F.2d 51, cert. denied, Japan, Atlantic and Gulf Conference v. United States, 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124 (1954); American Broadcasting Co. v. FCC, 89 U.S.App.D.C. 298, 191 F.2d 492 (1951);cf. Cities Service Gas Co. v. FPC, 255 F.2d 860 (10th Cir. 1958); Phillips Petroleum Co. v. FPC, 227 F.2d 470 (10th Cir. 1955).
 
 
 [23]
 Jaffe,supra note 19, at 423 (1965); see, e. g., Turkel v. Food and Drug Administration, 334 F.2d 844 (6th Cir. 1964), cert. denied, 379 U.S. 990, 85 S.Ct. 704, 13 L.Ed.2d 611 (1965).
 
 
 [24]
 See Jaffe, supra note 19, at 358-359; Byse and Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action, 81 Harv.L. Rev. 308, 335-336 (1967).
 
 
 [25]
 FPC v. Metropolitan Edison Co., 304 U.S. 375, 58 S.Ct. 963, 82 L.Ed. 1408 (1938); United Gas Pipe Line Co. v. FPC, 86 U.S.App.D.C. 314, 181 F.2d 796 (Bazelon, J.), cert. denied, 340 U.S. 827, 71 S.Ct. 63, 95 L.Ed. 607 (1950)
 
 
 [26]
 Jaffe,supra note 19, at 358, 418-423; see Foti v. Immigration and Naturalization Service, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963).
 
 
 [27]
 To the extent thatUnited Gas, supra note 25, seems to require a contrary result, the author of that opinion can only say that "the matter does not appear to me now as it appears to have appeared to me then." See McGrath v. Kristensen, 340 U.S. 162, 178, 71 S.Ct. 224, 233, 95 L.Ed. 173 (1950) (concurring opinion of Mr. Justice Jackson).
 
 
 [28]
 FCC v. WJR, The Goodwill Station, 337 U.S. 265, 272, 69 S.Ct. 1097, 93 L.Ed. 1353 (1949); Kessler v. FCC, 117 U.S.App.D.C. 130, 141, 326 F.2d 673, 684 n. 10 (1963);see Goldman, Administrative Delay and Judicial Relief, 66 Mich.L.Rev. 1423 (1968).
 
 
 [29]
 International Ass'n of Machinists and Aerospace Workers, AFL-CIO v. National Mediation Board, 138 U.S.App. D.C. 96, 104, 425 F.2d 527, 535 (1970); Kessler v. FCC, 117 U.S.App.D.C. 130, 141, 326 F.2d 673, 684 (1963); Deering Milliken, Inc. v. Johnston, 295 F.2d 856 (4th Cir. 1961); American Broadcasting Co. v. FCC, 89 U.S.App.D.C. 298, 191 F. 2d 492 (1951). The Administrative Procedure Act requires every agency "within a reasonable time * * * [to] proceed to conclude any matter presented to it," 5 U.S.C. § 555(b) (Supp. V, 1969), and provides that the reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1) (Supp. V, 1969)
 
 
 [30]
 Atlantic & Gulf Stevedores, Inc. v. Donovan, 274 F.2d 794 (5th Cir. 1960); Isbrandtsen Co. v. United States, 93 U.S. App.D.C. 293, 211 F.2d 51, cert. denied, Japan, Atlantic, and Gulf Conference v. United States, 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124 (1954); cases cited notes 22, 29supra; but see FTC v. J. Weingarten, Inc. 336 F.2d 687 (5th Cir. 1964), cert. denied 380 U.S. 908, 85 S.Ct. 890, 13 L.Ed.2d 796 (1965).
 
 
 [31]
 5 U.S.C. § 706 (Supp. V, 1969)
 
 
 [32]
 This court recently reached a similar disposition in Booth American Company v. FCC, No. 23,862 (D.C.Cir. Feb. 17, 1970). Petitioner sought to compel action on his application for an emergency license, which had been pending for over 17 months. In an unexplicated order, the court retained jurisdiction and remanded to the Commission for action or explanation within 20 days
 
 
 [33]
 A recent Congressional investigation of the administration of the FIFRA reported "lengthy and unwarranted delays in initiating cancellation action after facts sufficient to justify such action became known. * * *" House Comm. on Government Operations, Deficiencies in Administration of Federal Insecticide, Fungicide, and Rodenticide Act, H.R.Rep.No. 268, 91st Cong., 1st Sess. 15 (1969);see id. at 50-51.