**Harrison WELLFORD et al., Petitioners,**

**v.**

**William D. RUCKELSHAUS, Respondent.**

**No. 24434.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 18, 1970.

Decided Jan. 7, 1971.

Robb, Circuit Judge, dissented and filed an opinion.

Mr. William A. Dobrovir, Washington, D. C., with whom Mr. James W. Moorman, Washington, D. C., was on the brief, for petitioners. Mrs. Joan M. Katz, Washington, D. C., also entered an appearance for petitioners.

Mr. Raymond W. Fullerton, Atty., Department of Agriculture, with whom Messrs. Charles W. Bucy, Asst. Gen. Counsel, Department of Agriculture, and Alan S. Rosenthal, Atty., Department of Justice, were on the brief, for respondent.

Messrs. John D. Connor and Charles A. O'Connor, III, filed a brief on behalf of National Agricultural Chemicals Association, as amicus curiae.

Before BAZELON, Chief Judge, and ROBINSON and ROBB, Circuit Judges.

BAZELON, Chief Judge:

This is a petition for review of an order of the Secretary of Agriculture,[1] refusing to suspend the federal registration for certain purposes of the herbicide known as "2,4,5–T."

On the basis of recent studies indicating that 2,4,5–T may have serious toxic effects on man, animals, and plants, petitioners[2] filed with the Secretary a petition requesting him to take action under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA).[3] They asked him (1) to issue notices of cancellation commencing the administrative process that might terminate the federal registration of 2,4,5–T for all purposes, and (2) to suspend the registration of the herbicide for use around homes, lakes, and on food crops pending the conclusion of the administrative process.[4] The Secretary informed petitioners that he had suspended its registration for use around lakes, and for use in liquid form around homes.[5] He had issued notices of cancellation, but not suspension orders, with respect to its registration in two other categories: use in nonliquid form around homes, and use in any form on food crops.[6] He concluded that he had no statutory authority to order further suspensions or cancellations, on the basis of his evaluation of the relevant scientific data.

In this court petitioners challenge the Secretary's decision not to suspend the registration of 2,4,5–T for use on food crops, and for use in nonliquid form around homes. They contend that the available scientific evidence compels the conclusion that continued use of 2,4,5–T around homes and on food crops creates an "imminent hazard to the public," and that consequently suspension is required by the FIFRA.

In Environmental Defense Fund, Inc. v. Hardin, we construed the judicial review provisions of the FIFRA, and held that the statute authorizes direct review in this court of an order denying suspension, at the instance of any person adversely affected.[7] To facilitate review in that case, we remanded it to the Secretary for a statement of reasons for his

---

1. The responsibility of the Secretary of Agriculture in this connection has been transferred to the Administrator of the new Environmental Protection Agency. Reorg. Plan No. 3, of 1970, § 2(8) (i), U.S.Code Cong. & Ad.News, pp. 2996, 2998, 91st Cong., 2d Sess. (1970). Accordingly, the Administrator has been substituted for the Secretary as a party to this litigation. 5 U.S.C. § 907(c) (Supp. V, 1970).

2. Individuals and organizations interested in problems of environmental protection and public health.

3. 7 U.S.C. §§ 135–135k (1964).

4. For a summary of the statutory scheme, see Environmental Defense Fund v. Hardin, 138 U.S.App.D.C. 391, 393, 428 F.2d 1093, 1095nn.2–4 (1970) [hereinafter cited as EDF v. Hardin].

5. U. S. Dep't of Agriculture, Pesticides Regulation Div., PR Notice 70–11 (Apr. 20, 1970) (J.A. 40); USDA Press Release 1176–70 (Apr. 15, 1970) (J.A. 42).

6. USDA–PRD, PR Notice 70–13 (May 1, 1970) (J.A. 47); USDA Press Release 1397–70 (May 4, 1970) (J.A. 49).

7. 138 U.S.App.D.C. 391, 428 F.2d 1093 (1970).

decision.[8] At the suggestion of the Secretary, we followed a similar course in this case, asking in addition for an explanation of the standard used to determine when a hazard is sufficiently "imminent" to warrant immediate suspension of a registration rather than commencement of ordinary cancellation proceedings.

■ ■ Our review of the Secretary's action is shaped both by general principles of administrative law, and by the nature of the particular administrative action at issue in this case. We begin with the proposition that, within broad limits, the administrator has latitude not merely to find facts, but also to set policy in the public interest. Like most regulatory statutes, the FIFRA confers broad discretion on the Secretary. It is particularly appropriate to defer to that discretion when the question at issue is a matter of interim relief, as it is in this case.[9]

■ Nevertheless, the court has an obligation to ensure that the administrator has made a reasoned decision, which conforms to the legislative language and purpose.[10] And close scrutiny of administrative action is particularly appropriate when the interests at stake are not merely economic interests in a license or a rate structure, but personal interests in life and health.[11]

With these various principles in mind, we turn to the decision of the Secretary in this case. He articulated standards for the exercise of the suspension power, made findings of fact concerning the herbicide 2,4,5–T, and applied his standards to reach a decision in this case.

The Secretary's criteria for suspension are not seriously challenged here. In his view, the power to suspend a registration in order "to prevent an imminent hazard to the public" is an emergency power, to be exercised only when there is a "public health situation which must be corrected immediately, and cannot be permitted to continue while a hearing is being held  *  *  *." [12]

Although cancellation notices should issue as soon as the Secretary finds a substantial question concerning the safety of a registered product,[13] he reserves the suspension power for cases in which serious and irreparable harm to the public health is likely to occur before the

---

8. The Secretary subsequently renewed his challenge to the jurisdiction of this court, without success. Environmental Defense Fund v. Ruckelshaus, 140 U.S.App.D.C. —— at —— – ——, 439 F.2d 584 at 588–592 [hereinafter cited as EDF v. Ruckelshaus].

9. EDF v. Ruckelshaus, 142 U.S.App.D.C. at ——, 439 F.2d at 595; National Air Carriers Ass'n v. CAB, 141 U.S.App.D.C. 31 at 40, 41, 436 F.2d 185, 194, 195 (1970).

10. Greater Boston Television Corp. v. FCC, U.S.App.D.C. (No. 17,785, decided Nov. 13, 1970) (slip opinion at 17).

11. *See* EDF v. Ruckelshaus, 142 U.S.App. D.C. at —— – ——, 439 F.2d at 597–598.

12. Statement of the Reasons Underlying the Decision of the Secretary with respect to the Registrations of Products Containing 2,4,5–T, Aug. 31, 1970, at 4 (J.A. 54). The Statement adopts the

definition of "imminent hazard" formulated in the original panel opinion in Nor-Am Agricultural Products, Inc. v. Hardin, 435 F.2d 1133 at 1142–1143 (7th Cir. decided July 15, 1970)· vacated and decided *en banc* on other grounds, 435 F.2d 1151 (Nov. 9, 1970). That definition was drawn in turn from the legislative history of an analogous provision of the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 355(e), on which the FIFRA provision was apparently modeled.

For a proposed definition of "imminent hazard" as it is used in the FDCA and in the Federal Hazardous Substances Act, 15 U.S.C. §§ 1261 *et seq.*, see 35 Fed.Reg. 18679 (1970).

13. EDF v. Ruckelshaus, 142 U.S.App.D.C. at —— – ——, 439 F.2d at 592–595; *see* PR Notice 70–13, *supra* note 6 (cancellation notices issued on the basis of a "reasonable doubt" as to safety).

conclusion of the ordinary cancellation process.

In order to apply his standard to a particular product, the Secretary must first determine what harm, if any, is likely to flow from the use of the product during the course of administrative proceedings. He must consider both the magnitude of the anticipated harm, and the likelihood that it will occur. Then, on the basis of that factual determination, he must decide whether the anticipated harm amounts to an "imminent hazard to the public."

Petitioners contend that the use of 2,4,5–T around the home in nonliquid forms is sufficiently hazardous to warrant suspension under the Secretary's test. He explains his refusal to suspend, however, on the ground that nonliquid forms of the chemical are much less hazardous for home use than liquid forms. The basis for the distinction is that nonliquid forms contain relatively small concentrations of the chemical, whereas liquid forms contain high concentrations which must be diluted by the user.[14] No challenge is made to the factual finding that nonliquid forms are less hazardous than liquid forms.[15] Nevertheless, the question remains whether the public is entitled to protection from that lesser hazard.

The Secretary has not explained why the hazard associated with nonliquid forms of the chemical does not warrant suspension. We think it fair to infer, however, that he has identified a level of exposure which can safely be tolerated during the period required for formal administrative proceedings, and that nonliquid forms of 2,4,5–T prepared for household use result in exposure below that level. While we would have preferred a more explicit analysis, we are satisfied that the relevant factors were considered in a manner that accords with the requirements of the statute.[16]

The decision concerning the use of 2,4,5–T on food crops is more troublesome. The Secretary stated that the risk of harm from that use is insufficient to warrant suspension, because residues are negligible in food products that reach the consumer.[17] He did not discuss the risk of injury to farm workers or others who might be exposed to the chemical by virtue of its use on food crops, despite the fact that he clearly recognizes a hazard from direct exposure, as well as from consumption with food or water.[18] We are troubled by the possibility that the Secretary failed to give petitioners' allegations the careful consideration to which they were entitled,[19] or that he failed to assign

---

14. Statement of Reasons, *supra* note 12, at 2n.1 (J.A. 52n.1).

15. We would in any event be obliged to defer to the factual determinations of the Secretary, for the purpose of reviewing the denial of interim relief. *See* EDF v. Ruckelshaus, 142 U.S.App.D.C. at ——, 439 F.2d at 596.

16. *See* Pikes Peak Broadcasting Co. v. FCC, 137 U.S.App.D.C. 234, 244–245, 422 F.2d 671, 681–682 (1969).

17. Statement of Reasons, *supra*, at 14 (J.A. 64). The use of 2,4,5–T near water sources, on the other hand, has been suspended, because the Secretary found that "a potential danger to humans and acquatic [*sic*] life could exists [*sic*]." Statement at 10 (J.A. 60) ; *see* PR Notice 70–11 and Press Release 1176–70, *supra* note 5.

18. The registration of liquid formulations for household use was suspended because of "direct exposure hazards," particularly for pregnant women. Statement of Reasons, *supra*, at 2 n.1 (J.A. 52 n.1). If direct exposure hazards are significant only for pregnant women, and if pregnant women are never among the farm workers exposed to the chemical by virtue of its use on food crops, then those facts might provide a satisfactory explanation of the Secretary's decision. Neither the factual premise nor the suggested analysis can be ·inferred from his Statement, however, and it is not the function of the court to speculate when the basis for an administrative decision is wholly unexplicated.

19. *See* WAIT Radio v. FCC, 135 U.S.App. D.C. 317, 418 F.2d 1153 (1969).

sufficient importance to the risk of harm to human lives.

Accordingly, we remand the case for further consideration, and for a decision supported by a reasoned analysis of the relevant factors.[20] We think this course is especially appropriate in view of the fact that we are venturing into a new and uncharted area of the law. A new public sensitivity to issues of environmental protection has imposed new responsibilities on the courts, the legislature, and the administrative agencies. A new Environmental Protection Agency has been established, and its Administrator has the critical task of developing standards for administrative action throughout this area. In particular, he has succeeded the Secretary of Agriculture as the official responsible for the administration of the FIFRA.[21] Accordingly, in remanding this case for further action, we have left undisturbed the order of the Secretary denying relief, giving the new Administrator the opportunity to reconsider that order and, more important, to develop the standards needed for the effective administration of the Act.

Remanded for further proceedings in accordance with this opinion.

ROBB, Circuit Judge (dissenting):

In my judgment the record does not justify the conjecture in the majority opinion that the Secretary "failed to give petitioners' allegations the careful consideration to which they were entitled" or "failed to assign sufficient importance to the risk of harm to human lives." Accordingly I would deny the petition for review without remanding the case for further consideration.

20. *Compare* EDF v. Ruckelshaus, 142 U.S.App.D.C. at —— - ——, 439 F.2d at 596–597.

