440 F.2d 1171
 Susan EISBACH, Administrator of the Estate of John Eisbach, Deceased, and Lois Eisbach, Plaintiffs-Appellants and Cross-Appellees,
v.
JO-CARROLL ELECTRIC COOPERATIVE, INC., et al., Defendants-Appellees and Cross-Appellants.
 No. 18307.
 No. 18308.
 United States Court of Appeals, Seventh Circuit.
 April 7, 1971.
 Rehearings Denied May 17, 1971.
 
 James G. Madden, of Hunter, Hunter & Madden, Freeport, Ill., for William T. Thompson Co., defendant-appellee.
 David Jacker, John M. O'Connor, Jr., of Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., Robert K. Skolrood, of Reno, Zahm, Folgate & Skolrood, Rockford Ill., for Jo-Carroll Electric Cooperative, Inc. and Ralph J. Smuck, defendants-appellees and cross-appellants.
 William F. Wessel, Marvin C. Grodsky, New Orleans, La., for plaintiffs-appellants and cross-appellees.
 Before KILEY and CUMMINGS, Circuit Judges, and MORGAN, District Judge.[1]
 CUMMINGS, Circuit Judge.
 
 
 1
 In this diversity action, the fourth amended complaint alleged that plaintiffs' decedent, John Eisbach, was engaged in truck-gardening business in Illinois. In the spring of 1964, he had planted a large crop of tomatoes on a 2-acre leased tract. It was alleged that on June 10, 1964. defendant Jo-Carroll Electric Cooperative, Inc., acting through Ralph J. Smuck and two other individuals, sprayed nearby property to kill brush and weeds. Count I asserted that the brush killer was blown upon Eisbach and his tomato patch, destroying the crop to the tune of $40,000. Count II alleged that the brush killer entered Eisbach's body, causing "a blood disorder and a lymphocytic lymphosarcoma," disabled him, and necessitated heavy medical expenses prior to his death on October 31, 1968. This count sought $40,000 for medical bills, hospital bills, and funeral expenses. Count III sought $400,000 damages for Eisbach's wrongful death. The jury returned a verdict in favor of plaintiffs on Count I, awarding them $10,000 for the crop damage. Verdicts against plaintiffs were rendered as to Counts II and III.
 
 
 2
 In the third amended complaint, Counts II and IV were brought against defendant William T. Thompson Chemical Company and two other subsequently dismissed brush killer manufacturers. Count II sought $40,000 for crop damages, and Count IV sought $40,000 for Eisbach's medical bills, hospital bills, and other related expenses. Before trial, summary judgment was granted for Thompson on the ground that "there was no competent evidence that the defendant THOMPSON'S weed killer was used."
 
 
 3
 Plaintiffs have appealed from the adverse judgments on Counts II and III of the fourth amended complaint and from the summary judgment in favor of Thompson. Defendants Jo-Carroll and Smuck have cross-appealed from the judgment against them on Count I as to crop losses. We reverse and remand.
 
 
 4
 Plaintiffs' first argument is that the trial judge improperly refused to give seven proffered instructions. The first of these told the jury that if it found from the evidence that defendants were using an inherently dangerous toxic spray, they owed Eisbach a duty to exercise the highest degree of care "so as not to injure John Eisbach and his person or property." The next five instructions concerned the duty of the highest degree of care. The final refused instruction would have imposed strict liability in tort upon defendants.
 
 
 5
 Although the record discloses that the trial judge refused these instructions, only a few pages of the trial proceedings have been transcribed, and they do not disclose the instructions that were actually given or the evidence that was received. In this state of the record, we are unwilling to presume that the trial court committed error. Hershberger v. United States, 138 F.2d 515, 516 (7th Cir. 1943); State of Arkansas ex rel. La Gasse v. Godbehere, 261 F.2d 623, 625 (8th Cir. 1958). However, at the retrial, if there is conflicting evidence that this spray was inherently or unreasonably dangerous and that defendants knew or should have known of its dangerous propensities,[2] plaintiffs would be entitled to highest degree of care and strict liability instructions. Prosser, Law of Torts (3d ed.), §§ 34, 77; Restatement of the Law of Torts (2d ed.), §§ 388-389, 391-392, 394, 399, 401, 402A.
 
 
 6
 In effect, defendants Smuck and Jo-Carroll concede that the trial judge should have permitted plaintiffs to impeach former defendant Wesley Steinberger, whom they had called as an adverse witness. It is true that as to one question put to Steinberger, the point is apparently moot, for plaintiffs evidently obtained an answer by appealing to Steinberger's conscience. Nevertheless, upon retrial, if Steinberger is again a witness, under Rule 43(b) of the Federal Rules of Civil Procedure, plaintiffs should be permitted to impeach him if they find it necessary to do so.
 
 
 7
 Plaintiffs urge that they were entitled to a "protective order" prohibiting defendants Smuck and Jo-Carroll from calling any trial witnesses since they did not supply plaintiffs with a list of possible witnesses until the afternoon of October 6, 1969, the first trial day. Such a drastic remedy has been sanctioned by this Court in the past. Fisher v. Underwriters at Lloyd's, London, 115 F.2d 641, 646 (7th Cir. 1940). Plaintiffs had requested such a list on September 9, and it should have been furnished 15 days thereafter. Rule 33 of Federal Rules of Civil Procedure. Nevertheless, since the list was eventually furnished to plaintiffs on the first trial day, the district judge was entitled to permit defendants' witnesses to testify. Stewart v. Meyers, 353 F.2d 691, 696 (7th Cir. 1965).
 
 
 8
 Plaintiffs also attack certain comments of the district court with respect to the delayed appearance of Dr. Malcolm Hargraves, their chief medical witness. In all fairness, these remarks were strictly jocular and could not have prejudiced plaintiffs' case.[3]
 
 
 9
 Finally, plaintiffs assail the summary judgment in Thompson's favor entered three months prior to the trial. This motion was granted on the basis that no competent evidence showed whether any of Thompson's chemicals were used by Jo-Carroll on June 10, 1964. However, Thompson's answers to plaintiffs' interrogatories revealed that it had shipped a large quantity of this brush killer to Jo-Carroll on June 2, 1964. The affidavit of Ovid L. Maples, a private investigator for insurance companies, contradicted the deposition of Charles Youtzy, Jo-Carroll's manager, and disclosed that in August 1964, the Cooperative's manager showed him the "guilty" barrel and disclosed that the barrel contained Thompson's label. In fact, Maples removed Thompson's label from the barrel. As stated in 6 Moore's Federal Practice (2d ed.), ¶ 56.22[1], p. 2814, under Rule 56(e) of the Federal Rules of Civil Procedure, the party opposing a motion for summary judgment may proffer an affidavit to show the movant's deponents are not credible, thus raising a genuine issue of fact that must be tried by the jury. Therefore, Maples' affidavit was properly submitted to show that Thompson's deponent, Jo-Carroll's manager, was not credible.
 
 
 10
 Since Jo-Carroll was an adverse party, Rule 43(b) of the Federal Rules of Civil Procedure would permit plaintiffs to impeach Youtzy's testimony by having Maples testify as to his version of their August 24, 1964, conversation. As pointed out in 5 Moore's Federal Practice (2d ed.), ¶ 4310, p. 1377:
 
 
 11
 "Impeachment must lie in the case of the adverse party (or officer, etc., thereof) since such a witness, not being impartial, has to be subject to sanction to guarantee the truthfulness of his testimony. Moreover, none of the possible justifications for the rule against impeachment of one's own witness lie here."
 
 
 12
 To avoid this Rule, without any supporting authority, Thompson urges that Youtzy is not a managing agent of a party adverse to Thompson. Such a narrow reading of Rule 43(b) would stultify the search for truth. At the trial, it may be expected that Thompson will endeavor to shift the blame to the other defendants, and vice versa. To this extent, their interests are adverse. See Degelos v. Fidelity and Casualty Company of New York, 313 F.2d 809, 815 (5th Cir. 1963); Sanford Bros. Boats, Inc. v. Vidrine, 412 F.2d 958, 970-971 (5th Cir. 1959); McAllister Lighterage Line, Inc. v. Oil Barge Bejoil No. 5, 13 F.R.Serv. 33.21, Case 1 (S.D. N.Y.1949).[4] We decline to construe Rule 43(b) as forbidding Youtzy's impeachment through Maples' testimony.
 
 
 13
 Because Maples' affidavit did raise "a genuine issue as to any material fact" (Rule 56(e)), summary judgment for Thompson was improper.
 
 
 14
 It is impossible to predict what the jury's verdicts would have been on all counts if Steinberger were impeached and if Thompson had not been dismissed as a party. Therefore, Counts I, II, and III of the fourth amended complaint and Counts II and IV of the third amended complaint must be tried upon remand.[5]
 
 
 15
 The judgments are reversed and the cause is remanded for a new trial.[6]
 
 
 
 Notes:
 
 
 [1]
 Judge Morgan of the United States District Court for the Southern District of Illinois is sitting by designation
 
 
 [2]
 Because the Secretary of Agriculture found a substantial question concerning the safety of 2,4,5-T, the spray in question, in May 1970 he issued notices of cancellation of its registration for use in any form on food crops. See Wellford v. Ruckelshaus, 439 F.2d 598 (D.C.Cir. 1971)
 
 
 [3]
 Without the benefit of a transcript, we cannot say whether the court dubbed the defendant-witnesses as plaintiffs' witnesses, and to their prejudice
 
 
 [4]
 TheMcAllister opinion is discussed with approval in 4 Moore's Federal Practice (2d ed.), ¶ 3306, pp. 33-40; see also 5 Moore's Federal Practice (2d ed.), ¶ 43.10, pp. 1374-1375.
 
 
 [5]
 The judgment under Count I of the fourth amended complaint is being reversed upon the request of defendants Smuck and Jo-Carroll "so that the whole case as to these defendants can be tried anew" (p. 17 of their September 11, 1970 brief)
 
 
 [6]
 The Court declines to modify Judge Pell's order of August 6, 1970, denying Thompson's motion to dismiss the appeal and denying plaintiffs' motion to dismiss Smuck's and Jo-Carroll's cross appeal