**FRIENDS OF THE EARTH, Petitioner,**

v.

**UNITED STATES ATOMIC ENERGY COMMISSION and the United States of America, Respondents,**

**Northern States Power Company et al., Intervenors.**

**No. 73–1866.**

United States Court of Appeals, District of Columbia Circuit.

Aug. 24, 1973.

Anthony Z. Roisman, Washington, D. C., was on the motion for emergency consideration and summary reversal.

Jerome Nelson, Sol., Leon Silverstrom, Atty., Wallace H. Johnson, Asst. Atty. Gen., A. E. C., and Raymond N. Zagone, Atty., Dept. of Justice, were on the opposition for respondent.

George H. Lewald, Boston, Mass., Harold Reis, Washington, D. C., and Dale G. Stoodley, Boston, Mass., for intervenor Boston Edison Co.

George F. Trowbridge, Washington, D. C., was on the motion for intervenor Jersey Central Power and Light Co. and Northern States Power Co.

Arvin E. Upton, Eugene B. Thomas, Jr., and James P. McGranery, Jr., Washington, D. C., were on the motion for intervenor Niagra Mohawk Power Corp.

Ezekiel G. Stoddard, Washington, D. C., was on the motion for intervenor, General Electric Co.

Jerome Ackerman, Washington, D. C., and William H. Cuddy, Hartford, Conn., were on the motion for intervenor Connecticut Light and Power Co., etc.

Before BAZELON, Chief Judge, and LEVENTHAL, Circuit Judge.

## ORDER

PER CURIAM.

On consideration of petitioner's motion for summary reversal, and of the oppositions submitted thereto, it is

Ordered by the Court that the aforesaid motion for summary reversal is denied.

Separate statements by Chief Judge BAZELON and Circuit Judge LEVENTHAL.

BAZELON, Chief Judge:

Petitioner seeks summary reversal of an order of the Atomic Energy Commission which found no warrant for an emergency cutting back of the authorized power level of nine nuclear plants supplying electricity to various parts of the United States. Petitioner contends that the recently discovered phenomenon of fuel densification, which may affect certain emergency safety procedures, makes it impossible for the Commission to conclude that nuclear power plants are still in compliance with applicable safety regulations. The Commission, however, found that operation of the plants pending staff review of fuel densification presents no "undue risk to public health and safety." [1]

Where, as here, there is a possibility of imminent danger to life and health, emergency court review of administrative action must be more searching than in cases, such as ratemaking, involving purely economic interests.[2] But it is not

1. Atomic Energy Commission, Memorandum and Order, Docket Nos. 50–219, 237, 249, 265, 220, 245, 263, 293 (August 6, 1973) at 5.

2. Environmental Defense Fund, Inc. v. Ruckelshaus, 142 U.S.App.D.C. 74, 439 F.2d 584, 598 (1971).

our duty, if for no other reason than that we lack the competence, to delve into complex scientific issues such as those involved here. We should not, for example, attempt to decide the precise effect of fuel densification on the "gap conductance" parameter, which describes the rate at which heat may be removed from the slender metal rods in nuclear reactors. Our function is rather to insure that the agency provides "a framework for principled decision-making."[3] This framework would ideally include the clash of opposing expert views in a setting involving some right of cross-examination, in the absence of unusual circumstances or emergency conditions.[4] Under the circumstances of this case, and in light of continuing Commission proceedings, an adequate, if not ideal, framework has been provided.

In 1972, while reviewing other facilities, Commission staff uncovered the phenomenon of fuel densification and determined that further study was necessary to determine the possible impact of this phenomenon on safety. The staff has received submissions from licensees and will complete its review of fuel densification and make any necessary proposals on September 4, 1973. Petitioner's challenge, filed July 12, 1973, was based on two affidavits of a Commission staff member filed in a licensing proceeding not involving any of the plants at issue here.[5] In response to petitioner's challenge the Commission invited comments from the affected licensees, the regulatory staff, and any other interested persons. Comments were received from the petitioner, the staff, the licensees, and two private individuals. All of the comments except the petitioner's, opposed the request for the emergency cutting back of power. The Commission's order, in addition to denying the petitioner's request, invited petitioner and others to make further submissions. The Commission noted that its staff would, if it found it appropriate, order a cutting back of power when it completed its study on September 4, or even prior to September 4 if necessary.

Applying these facts to the principles that govern our review, this procedure was not ideal. There were no technical submissions to the Commission setting forth the position of petitioner. Unsurprisingly, the licensees had access to far greater technical resources than did petitioner. In future proceedings it may be necessary for the Commission to seek out experts representing varied and opposing technical views to insure that issues such as these are resolved in the "crucible of debate through the clash of informed but opposing scientific and technological viewpoints."[6] Only that sort of approach can "establish a decision-making process which assures a reasoned decision that can be held up to the scrutiny of the scientific community and the public."[7]

Here the emergency nature of petitioner's request made more extensive proceedings difficult if not impossible. Under the circumstances the presence of submissions from the regulatory staff helped to adequately inform the Commission. It was the staff which discovered the phenomenon of fuel densification and thus, on this issue, the staff was both expert and relatively impartial. The Commission's procedures were thus sufficient to enable me to concur in denying petitioner's requested relief.

The foregoing is simply a statement of the principles which guided my re-

---

3. *Id.* at 598.

4. International Harvester Company v. Ruckelshaus, 155 U.S.App.D.C. 411, 478 F.2d 615, 651, 652 (1973) (Bazelon, C. J., concurring in result).

5. These affidavits, which contained troubling statements from a member of the Commis-

sion's own staff, gave petitioner a colorable allegation of danger. Such a claim requires the high degree of agency scrutiny discussed here.

6. International Harvester Company v. Ruckelshaus, *supra* at 652.

7. *Id.*

view of this case. With due respect to Judge Leventhal, I did not take "this occasion to discourse on [my] views." [8] Nor can I accept the view that my discussion herein is at odds with the holding, as distinguished from the dicta, of *International Harvester* or any other case of this Court.

LEVENTHAL, Circuit Judge:

Petitioner moves this court for summary reversal of an order of the Atomic Energy Commission which denied petitioner's request for an emergency reduction in the authorized power output of nine nuclear electricity-generating plants licensed by the Commission. The controversy grows out of the discovery, made in 1972 by the Commission staff, of a phenomenon known as fuel densification, which may affect the retention of heat within the fission-generating core of a nuclear reactor. A corollary question relates to the ability of nuclear plants already licensed to comply with Commission standards on cooling of reactor cores. In December, 1972, the Commission staff requested plant licensees and General Electric, a manufacturer of plant equipment, to submit for staff review analyses of possible effects of fuel densification on a variety of plant operations.

On July 12, 1973, petitioner filed a petition with the Commission for an emergency interim reduction in the authorized output of the nine plants. Petitioner contended that the Commission could not negative the possibility that plants at full power would, in unusual circumstances, exceed the reactor core temperatures prescribed by Commission regulations.

After inviting and receiving comments from the licensees and other interested parties in response to the petition, the Commission concluded that in view of the extreme improbability of fuel densification and core over-heating, continued operation of the plants at authorized capacity during the period while the regulatory staff completed its review did not pose any "undue risk to public health and safety." The Commission's order of August 6 directed its staff to complete its study of the effects of fuel densification by September 4, and denied petitioner's request for interim emergency action. In all other respects the Commission deferred ruling on the petition, pending its receipt of the staff's study and recommendations.

In its motion petitioner contends that the Commission's action in awaiting the staff analyses of the material presented to it is a violation of law, so clear-cut that it calls for summary reversal.[1] One can perhaps speculate as to a legal foundation for relief, extrapolating from Environmental Defense Fund v. Hardin [2] to the nth degree. But there is no substantial contention that the Commission has been dilatory in scheduling the inquiry under way. We are not being asked to enjoin a Commission action, but to mandamus one. It is obvious that the motion papers simply provide no substantial basis for judicial intervention at this juncture. The mere suggestion of even a substantial safety hazard does not compel the exercise of emergency power. Where the agency weighs the risks and withholds emergency relief while conducting further study into the matters at issue, its judgment will be sustained if it "appears from the whole case and the reasons stated that the [agency] action is supported by reason."

---

8. Statement of Leventhal, J., *infra* at 1035.

1. Summary reversal is an extraordinary remedy, for which the proponent has a "heavy burden of demonstrating both that his remedy is proper and that the merits of his claim so clearly warrant relief as to justify expeditious action." United States v. Allen, 133

U.S.App.D.C. 84, 85, 408 F.2d 1287, 1288 (1969); Natural Resources Defense Council, Inc. v. Morton, 148 U.S.App.D.C. 5, 10, 458 F.2d 827, 832 (1972).

2. 138 U.S.App.D.C. 391, 428 F.2d 1093 (1970).

Nader v. Federal Aviation Administration, 142 U.S.App.D.C. 264, 440 F.2d 292, 294 (1971).

Chief Judge Bazelon has taken this occasion to discourse on his views, concerning issues not raised by the parties, as to how an agency should handle the proceedings involving safety and health, and to speculate as to what might be required in other circumstances or in the future. Petitioner has raised no objection, either before the Commission or this court, to the sources of technical information obtained by the Commission in response to the petition presented, to the opportunity which the Commission afforded interested parties to present views in response to the petition, or to the diversity of viewpoints which the Commission solicited and considered before denying the emergency relief petitioner sought. Judge Bazelon's underlying approach, voiced in his separate opinion in *International Harvester*,[3] seems to be pointed toward distending the procedural requirements for rule-making proceedings. He seems to be trying to chart a course whereby cross-examination will become routine in rule-making proceedings, subject to exceptions for unusual or emergency circumstances. The view developed in the majority opinion in *International Harvester*,[4] is that oral presentations in rule-making, however desirable, are not generally required, and that such requirements as may be evolving apply to crucial issues where alternative procedures are not adequate. Those alternatives may include forcused written presentations, or oral submissions at legislative-type hearings, with questions submitted by parties through the hearing officer. To try to formulate now the precise respects in which our views coincide, or diverge, would be time-consuming and unproductive of focused debate. In any event, we agree that the present motion for summary reversal should be denied.

3. International Harvester Co. v. Ruckelshaus, 155 U.S.App.D.C. 411, 478 F.2d 615 (1973).