**BALDWIN COUNTY ELECTRIC MEMBERSHIP CORPORATION et al., and City of Luverne, et al., Plaintiffs-Appellants,**

v.

**PRICE COMMISSION et al., and Alabama Power Company, Defendant-Appellee and Intervenor-Appellee.**

**Nos. DC–4, DC–5.**

Temporary Emergency Court of Appeals, June 18, 1973.

Certiorari Denied Oct. 15, 1973.
See 94 S.Ct. 230.

D. Biard MacGuineas, Washington, D. C. (Volpe, Boskey & Lyons, Reuben Goldberg and Arnold Fieldman, Washington, D. C., and Maurice F. Bishop, Birmingham, Ala., with him on the brief), for appellants.

Robert E. Easton, Atty., Dept. of Justice, Washington, D. C. (Harlington Wood, Jr., Asst. Atty. Gen., and Harold H. Titus, Jr., U. S. Atty., Washington, D. C., with him on the brief), for Government appellee.

George F. Bruder, Debevoise & Liberman, Washington, D. C., for intervenor-appellee.

Before TAMM, Chief Judge, and HASTIE and JOHNSON, Judges.

JOHNSON, Judge.

Appellants, various cooperatives and municipalities which are wholesale customers of the Alabama Power Company, seek a reversal of an order of the district court which granted appellees' motion for summary judgment. The effect of the lower court's order was to approve an action of the Price Commission allowing certain rate increases by Alabama Power in the sale of electric power to the appellants. We affirm.

On November 1, 1971, the Alabama Power Company filed with the Federal Power Commission (FPC) an application for a rate increase to be effective January 3, 1972, covering sales by the company to the appellants. Rather than reject outright a proposed rate increase, the FPC had authority to approve the increase but delay its effect during a

suspension period lasting as long as five months. 16 U.S.C. § 824d(e). On December 30, 1971, the FPC issued an order permitting Alabama Power's rate increase to go into effect February 2, 1972, after a one-month suspension period ordered to commence January 3. On January 13 and 14, the appellants in this case filed applications for rehearing requesting the FPC to reconsider its order of December 30.

On January 14, 1971, while this application for rehearing was pending, the Price Commission published new regulations dealing with rate increases by public utilities to become effective January 17, 1972. Section 300.16(i)(3) of these new regulations provided:

> (i) *Regulated public utilities—Interim report on increases put into effect subject to accounting and refund.*
>
> \*   \*   \*   \*   \*   \*
>
> (3) Notwithstanding any other provision of this section, no price of the kind covered by this paragraph (i) may be increased before the end of the maximum suspension period permitted by law unless the regulatory agency has certified to the Price Commission that there is good cause for an earlier effective date, together with its reasons therefor, and the Price Commission has approved that certification.

37 F.R. 653 (January 14, 1972). On January 21, the appellants filed with the FPC a Supplemental Application for Rehearing requesting the FPC to comply with Section 300.16(i)(3) of the Price Commission Regulations by suspending for the full five-month statutory period Alabama Power's proposed increase, which had not yet gone into effect. At the same time, the appellants notified the Price Commission of the status of the proceeding before the FPC and specifically of their contention that Section 300.16 required the full five-month suspension of the proposed rate increase. On February 11, the FPC issued an order denying rehearing, finding that Section 300.16(i)(3) did not require alteration of its earlier order:

> The order as issued December 30, 1971, is in conformity with the Regulations in effect at that time.[1]

On February 17, 1972, appellants filed with the Price Commission their Request For Rescission Or Suspension of Interim Rate Increase Permitted To Go Into Effect In Violation Of The Price Commission's Regulations. This submission expressly called attention to the FPC's failure to comply with the provisions of Section 300.16(i)(3). On March 24, 1972, the Price Commission published its Decision List No. 74–56, by which Alabama Power's rate increase was permitted to stand. On March 31, 1972, in a letter to appellants' attorney, Mr. Robert D. Banker, Acting Chief of the Public Utilities and Regulated Industries division of the Price Commission, confirmed that their request for rescission or suspension had been taken into account by the Commission in making its decision of March 24. Subsequently, the appellants filed suit in district court pursuant to Section 210(a) of the Eco-

---

1. The applicable regulation at that time was Section 300.16(a) which read in pertinent part as follows:

(a) *In general.* A person which is a regulated public utility . . . may charge a price, rate or tariff in excess of the base price if that increase has been approved by a regulatory agency or other appropriate legal authority. A public utility which had revenues of $100 million or more during its most recent fiscal year shall inform the Price Commission of all requests for rate increases and immediately notify the Commission in writing of an agency order granting an increase and of any other authorized increase.

\*   \*   \*   \*   \*

In order to insure that the goals of the economic stabilization program are attained, the Price Commission reserves the right to review and limit the amount of any such requested increase, ordered increase, or other authorized increase. 36 F.R. 23977 (Dec. 16, 1971).

nomic Stabilization Act Amendments of 1971.[2]

Appellants argue that the Price Commission violated its own regulations, Section 300.16(i)(3), in failing to require that Alabama Power's rate increase be suspended for the five-month maximum suspension period permitted by law. It is not argued that the Commission's approval of the increase was inconsistent with other decisions of the Commission or that the regulation itself is contrary to the purposes of provisions of the Economic Stabilization Act. P.L. No. 91–379 (Aug. 15, 1970), as amended by P.L. No. 92–210 (Dec. 22, 1971). It is argued only that, by its language, Section 300.16(i)(3) applies to Alabama Power's rate increase, which was scheduled to take effect after January 17. The Price Commission, however, did not interpret the regulation as applying to Alabama Power's rate increase, since the proposed increase was reviewed and decided upon by the FPC prior to the effective date of the new Price Commission regulations, even though the actual rate increase did not take place until after the regulation was in force.[3]

Appellants' argument needs little discussion. It is true that a governmental agency may not act contrary to its own regulations. E. g. Service v. Dulles, 354 U.S. 363, 372, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). Here, however, Section 300.16(i)(3) is silent on the point in issue between the parties. The section states that no price covered by the section may be increased before the end of the maximum suspension period permitted by law. It does not, however, purport to alter the status of valid suspension orders already issued at the time the regulation became effective. Nor does it purport to exempt rate increases which were approved prior to the effective date of the regulations. In such a case, an administrative agency's interpretation of its own regulation is entitled to great deference by the courts.[4] See, e. g., Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); University of Southern California v. Cost of Living Council, 472 F.2d 1065 (Em.App.1972); United States v. Lieb, 462 F.2d 1161 (Em.App.1972). As a further consideration, there is a

2. P.L.N. 92–210 (Dec. 22, 1971).
    § 210. Suits for damages or other relief
        (a) Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief
        . . . .

3. The contention that the decision allowing the rate increase was not an "interpretation" of the regulation because it was made by staff members and not by the Commission is not well-taken. It appears from the record that the authority to approve the rate increase, vested in the Price Commission, was properly delegated to staff officials of the Commission. In any case, since the appellants, without complaining to the Commission, proceeded directly to federal court to challenge an action of the Commission, they will not now be heard to argue that, in fact, there was no "action" taken by the Commission.

4. Appellants urge that this doctrine should not apply here since the Price Commission did not articulate a reason for its interpretation of the regulation. It is true that the Commission merely issued a list of approved rate increases. In the context in which the rate increase was approved, however, it was quite clear that the Commission accepted the FPC's position that its actions had been in compliance with the regulations in effect at the time. The Price Commission was fully aware of the application of appellants to the FPC requesting it to comply with Section 300.16(i)(3) and of the FPC order denying this application and states its position. Indeed, the appellants had made certain that it was brought to the attention of the Commission. Further, the Commission made known to the appellants by letter that it had considered their request for rescission. Under the circumstances the Commission, by approving the rate increase, assented to the rationale expressed by the FPC.

strong presumption against construing regulations so that they have the effect of altering regulatory actions already taken. See Davis, Administrative Law Treatise § 508. Under these circumstances, it clearly cannot be said that the Price Commission acted arbitrarily or capriciously in determining that its regulation 300.16(i)(3) applied prospectively only.

Accordingly, the judgment of the district court is affirmed.

HASTIE, Judge (dissenting).

I am unable to join the majority in giving legal effect to the purported action of the Price Commission that is challenged in this case.

Seeking a substantial increase in the authorized rates that then applied to its sales of power to wholesale customers, including cooperatives and municipalities, Alabama Power Company filed with the Federal Power Commission an application for legally prerequisite agency sanction of this price change. The application was filed November 1, 1971, and it proposed that the higher rates be permitted to become effective January 3, 1972.

As customers who would have to pay the proposed price increases, the municipalities and cooperatives that are plaintiffs in this case filed timely protests with the Federal Power Commission and at the same time requested that agency to suspend the proposed increase for a five-month period pending consideration of and decision on the merits of the proposal, a procedure authorized by Section 205(e) of the Federal Power Act. 16 U.S.C. § 824d e. On December 30, 1971, the Commission imposed a suspension period of one month only, thus permitting the proposed increase to become effective on an interim basis on February 2, 1972. Two members dissented on the ground that a five-month suspension, the maximum authorized by law, should have been imposed as the present appellants had requested.

On January 14, 1972, the Price Commission, exercising its unquestioned power under the Economic Stabilization Act, published new regulations applicable to rate increases by all such public utilities as Alabama Power Company. Subsection 300.16(i)(3) of the new regulations, 37 Fed.Reg. 653 (1972), provided that no interim price increase should be put into effect "before the end of the maximum suspension period permitted by law [in this case five months] unless the regulatory agency [here the Federal Power Commission] has certified to the Price Commission that there is good cause for an earlier effective date, together with its reasons therefor, and the Price Commission has approved that certification".

Recognizing the applicability of this regulation to its imminent interim price increase, Alabama Power Company wrote to the Price Commission on January 18, 1972, that it was undertaking to obtain the required certification by the Federal Power Commission and that "it was expected that such certification will be obtained in sufficient time for tender to the Price Commission prior to February 3, 1972".

On January 21, 1972, the appellants asked the Federal Power Commission to amend its interim rate order to conform to the new Price Commission requirement of a five-month suspension. The Federal Power Commission neither granted this relief nor certified to the Pay Commission that a suspension period of less than five months was warranted in this case. Instead, it entered an order on February 11, 1972, refusing to reconsider its December order and justifying this disposition of the matter by a correct but unilluminating statement that the order of December 30, 1971, "is in conformity with the Regulations in effect at that time".

In the meantime, when the one-month suspension period ended on February 2, Alabama Power Company had put its rate increases into effect.

Challenging this action, the appellants filed with the Price Commission on February 17, 1972, a petition asking that agency to suspend or rescind the February 2 interim rates as price increases prohibited by Regulation 300.16(i)(3). Apparently in response to this petition and claims asserted in other unrelated cases, there issued from the Price Commission's "Office of Public Affairs" on March 24, 1972, an unsigned document entitled "Decision List #74–56". This eight page tabulation of actions taken on many matters included an announcement that the Commission had approved the Alabama Power Company interim rate increase. The parties to this suit received copies of this document and nothing more.

On April 13, 1972, the appellants filed the present action against the Price Commission and Alabama Power Company in the District Court for the District of Columbia seeking a declaratory determination that the announced administrative approval of Alabama Power Company's February 2, 1972, interim price increases was invalid as violative of Section 300.16(i)(3) of the Commission's own regulations. The opposing parties moved for summary judgment and the court entered summary judgment for the defendants. This appeal has been taken from that judgment.

Certain additional facts about the purported Price Commission action in this case are before us and are relevant to the contentions of the parties. In the district court the plaintiffs submitted and the Price Commission responded to several interrogatories. One interrogatory inquired whether "any of the members of the Price Commission . . . participated in" the decision now in question. The Price Commission answered, "No". A second interrogatory read: "Was the Decision recorded in any minute or other record of action, or opinion or other document maintained by the Price Commission apart from Decision List #74–56?" The interrogatory also requested a copy on any such document or record of decision. To this the

answer was: "Such matters are irrelevant and privileged as the internal work product of the Commission . . ." The next interrogatory asked the Commission to "identify the individual or individuals" who made the decision. Declining to answer this question, the Commission dismissed it as "irrelevant".

This refusal of an administrative agency to supply a party aggrieved by its announced and purported action with a copy of any formal document embodying that decision or to disclose the identity of the individual or individuals who rendered the decision is amazing and perhaps unprecedented. Accordingly, at the argument of this appeal, we called upon counsel for the Commission to supply the court with the information in question. No document other than the already mentioned "Decision List" was produced in response to our request. We must conclude that there is nothing else in the nature of a decision.

However, the Commission has submitted affidavits showing successive subdelegations of the Commission's authority to dispose of individual petitions concerning price increases: first, from the Commission to its Chairman; second, from the Chairman to the Executive Director; and third, from the Executive Director to the Director of Program Operations. This is related to the present case by an affidavit of Don J. Wortman, Director of the Office of Program Operations, averring that "the price increase application of the Alabama Power Company was approved *by my office* on March 22, 1972". (emphasis added). This language must mean that Mr. Wortman himself did not personally make the decision. Even now the subordinate staff member who made the decision approving the Alabama Power Company's interim increase remains anonymous. And there is not even a formal record of this subordinate's action, much less any disclosure of its basis, except for the inclusion of the Alabama Power Company case on a decision list published by the Commission's "Office of Public Affairs", presumably after the anon-

ymous staff member instructed that office to list that interim price increase among those to be announced as approved.

It may be helpful to approach the issues that require adjudication by considering what the situation would have been absent any purported Price Commission validation of the February 2 interim price increase.

Alabama Power Company originally proposed that increased rates go into effect January 3, 1972. The Federal Power Commission's order of December 30, 1971, authorized a February 2, 1972, interim effectuation of the proposed increases. But before these interim rates could become effective, the Price Commission's January 14, 1972, publication of Regulation 300.16(i)(3) expressly prohibited any interim increase until the maximum authorized suspension period, here five months, should elapse unless, in an appropriate case, the Federal Power Commission should certify, with an affirmative showing a good cause, that an earlier effective date was warranted and unless the Price Commission should approve that documented certification. Since no Federal Power Commission certification was sent to or acted upon by the Price Commission in this case, Section 300.16(i)(3) would invalidate Alabama Power Company's subsequent interim price increase, unless that regulation was on its face inapplicable to interim increases that had been administratively approved by the Federal Power Commission before its adoption to become effective on a date subsequent thereto. The plain reading of subsection 300.16(i)(3) is that after its January 14, 1972, publication, "no price may be increased" by a seller without compliance with the subsection's requirements.

Thus, the regulation operates comprehensively upon all future changes in prices, without regard for the time of their anticipatory sanction by some other regulatory agency whose authority in the premises is subordinate to that of the Price Commission.[1] At the same time, consideration of the judgment of another concerned regulatory agency is not foreclosed, since express provision is made for Price Commission consideration of an appropriate agency's certification that shall present adequate justification for making an interim price increase effective without the otherwise mandated full period of suspension. It will be remembered that Alabama Power Company recognized the applicability of this regulatory scheme to its imminent price increase when it wrote to the Price Commission in January stating its intention to obtain Federal Power Commission certification and submit it for approval before the scheduled date of the increase.

A contention now made by Alabama Power Company that subsection 300.-16(i)(3) should not be given "retroactive" application seems to be an afterthought and is beside the point. As has been pointed out, that subsection refers to and restricts only the actual effectuation of price increases. And Alabama Power increased its rates nearly three weeks after the subsection became law. Only a roll back of prices already in effect would constitute a dealing with prices retroactively.

Thus, but for the subsequent purported Price Commission approval of the Alabama Power Company's February 2, 1972, interim price increase as announced in "Decision List #74–56", that price increase would have been unlawful as a plain violation of the controlling

---

1. It was an agreed premise of our decision in Bishop v. Public Service Co. of N.H., Em.App., 1972, 467 F.2d 510, that a "freeze" of public utility rates, imposed by the Price Commission, precluded price increases that already had been authorized by a local regulatory agency to become effective at a time subsequent to the freeze order. Similarly, it was held in United States v. Cincinnati Transit, Inc., S.D. Ohio 1972, 337 F.Supp. 1068, that the price freeze of August 15, 1971, barred a public utility price increase that had been authorized by a local regulatory agency before August 15 but was not scheduled to become effective until after that date.

regulation. It remains, therefore, to consider whether the otherwise invalid increase was validated by what was done in the name of the Commission.

The Price Commission was the delegatee of the power to control prices which the Economic Stabilization Act conferred upon the President as a major aspect of authority granted him to stabilize the economy. By successive internal subdelegations the Director of Program Operations was authorized in some circumstances to act for the Commission in approving individual requests for permission to increase prices. One may doubt the desirability of, but recognize impelling practical reasons for this subdelegation of the Commission's adjudicatory authority to a subordinate two steps removed from the Commission itself. But in this case, as has been pointed out, the decision was not made by the staff officer who was the Commission's subdelegatee, but by an unidentified employee in the office of the subdelegatee. I see no way in which such action of a remote subordinate without Commission authorization can lawfully be recognized as effective Commission action validating an otherwise unlawful price increase. And neither the appellees nor my Brothers have suggested how this action can be legitimated.

But this is not the only deficiency here. Even if the Director himself had decided this case, exercising duly delegated authority to approve price increases, he would have been bound and restricted by the relevant regulations of the Commission.[2] Here, the relevant regulation required a five month suspension of an interim price increase unless the Federal Power Commission should first submit to the Commission a documented certification and the Commission should then approve the proposal thus justified. It might well be appropriate for the Commission's subdelegatee to consider a duly submitted Federal Power Commission certification and justification and to decide for the Commission whether this required submission was adequate and whether the recommended price increase should be approved. But in this case the acceleration of the interim increase was approved without either the certification or the supporting justification that subsection 300.16(i)(3) expressly required. Thus, the person making the decision undertook to disregard or waive a plain requirement of the Commission's regulations.[3] This the subdelegatee himself had not power to do. The action taken in this case went beyond the bounds of the delegated authority and thus, in my view, was legally a nullity whether the subdelegatee himself or someone else in his office was the actor. In my view, the majority opinion incorrectly treats this case as though the Commission itself, not a remote subordinate, had decided to grant an exception to its regulations.

For these reasons, I would reverse the decision of the district court.

I have not overlooked the additional question whether, other considerations aside, mere announcement of summary Commission approval of a contested individual price increase is, for purposes of judicial review, a sufficient performance of the Commission's adjudicatory function. On occasion courts have vacated decisions of administrative agencies because the agency action has lacked explication deemed essential to in-

---

2. The government recognizes, as does the majority opinion, that the Commission itself is legally bound to act in accordance with its own regulations. *Cf.* Service v. Dulles, 1957, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403; Accardi v. Shaughnessy, 1954, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681.

3. The Commission has argued, whether rightly or wrongly, that it may make reasonable exceptions in the application of its regulations to particular cases. However that may be, we have here a case in which a staff officer, without Commission approval, has acted contrary to an explicit requirement of a controlling regulation.

·formed judicial review.[4] Recognizing this need for explication, Congress has mandated that denial of a written petition "of an interested person made in connection with any agency proceeding . . . shall be accompanied by a brief statement of the grounds for denial", unless "the denial is self-explanatory". 5 U.S.C. § 555(e). And section 207 of the Economic Stabilization Act Amendments of 1971, 85 Stat. 743, 12 U.S.C. § 1904 note, explicitly makes this requirement applicable to administrative decisions of wage and price control agencies.

Apparently in an effort to comply with this requirement without imposing upon itself the burden of giving reasons for each original decision, the Price Commission has provided that when an aggrieved party asks it to reconsider a decision and the petitioner "makes a prima facie showing that the Commission's initial action was erroneous in fact or in law", the Commission, "where administratively feasible . . . will issue a decision in writing directed to the appellant setting forth the facts, conclusions of law, its decision, the basis therefor and an appropriate order". See Regulations §§ 305.71, 305.38. But this provision is of no help to an aggrieved party

who wants and needs to know the basis of original decision in order to "make a prima facie showing" of decisional error such as must appear in his petition for reconsideration. Thus, it is doubtful whether the appellants in this case could have obtained an explanation of the announced agency approval of the challenged interim rate increase by invoking this restrictively qualified procedure for "reconsideration". In any event, they did not try, probably because they were not informed that a subordinate had made the decision. Thus, they brought entirely unexplained administrative action into the judicial forum for review.

Certainly, the agency action as announced in this case does not conform to the requirement of section 555(e) of title 5. But since what was done is invalid for other reasons, I find it unnecessary to decide whether this defect would require a remand to the Commission despite the failure of the appellants to ask for agency reconsideration and explanation of what was decided. Suffice to say, as the matter now stands informed judicial review of agency approval of interim rate increases is seriously impeded, if not precluded, by agency failure to state the basis of that decision.[5]

4. *E. g.*, F.P.C. v. United Gas Pipe Line Co., 1968, 393 U.S. 71, 89 S.Ct. 55, 21 L.Ed.2d 55; Burlington Truck Lines, Inc. v. United States, 1962, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207; S.E.C. v. Chenery Corp., 1943, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626. Recently, the Court of Appeals for the District of Columbia has found it necessary to remand several cases in which summary agency decisions have issued without explanation. Environmental Defense Fund, Inc. v. Ruckelshaus, 1971, 142 U.S.App.D.C. 74, 439 F.2d 584; Medical Committee for Human Rights v. S.E.C., 1970, 139 U.S.App.D.C.

226, 432 F.2d 659; Environmental Defense Fund, Inc. v. Hardin, 1970, 138 U.S.App.D.C. 391, 428 F.2d 1093.

5. "Sound principle sustains the practice of vesting choice of policy with the . . . [administrative agency]. Its corollary is that the specific decision must be explained, not merely explainable, in terms of the ingredients announced by the . . . [agency] as comprising . . . [its] policies and standards." Environmental Defense Fund, Inc. v. E. P.A. 150 U.S.App.D.C. 348, 1972, 465 F.2d 528, 539.