**Norman A. PLOTKIN, Plaintiff-Appellant,**

**v.**

**C. Jackson GRAYSON, Jr., et al., Defendants-Appellees.**

**Nos. DC–10, DC–11.**

Temporary Emergency Court of Appeals.

Oct. 9, 1973.

Norman A. Plotkin, pro se.

Harlington Wood, Jr., Asst. Atty. Gen., Harold H. Titus, Jr., U. S. Atty., District of Columbia, William E. Nelson, and Allen W. Hausman, Dept. of Justice, Washington, D. C., for appellees.

Before HASTIE, ANDERSON and JOHNSON, Judges.

ROBERT P. ANDERSON, Judge:

The appellant, Norman A. Plotkin, during all of the times covered by this case and by its companion case on appeal, DC–11, was the owner of an apartment house, containing thirty-two dwelling units, at 164 Danforth Street, Jersey City, New Jersey, which he leased to month-to-month tenants. On December 23, 1971 he read in the New York Times a policy statement, issued the day before by the Price Commission, concerning the control of rents. Acting pro se, he sought to increase the rents payable by his tenants by notifying them on December 30th, in accordance with his interpretation of the policy statement, that their rents would be increased on February 1, 1972. Apparently unknown to Plotkin, the Commission on December 29, 1971 adopted and issued formal regulations governing rent increases.

These were published in the Federal Register on December 30, 1971, and thereby became operative and enforceable.

Following Plotkin's notice a dispute arose between some of his tenants and him as to whether or not the tenants had been properly notified pursuant to the new regulations, 6 C.F.R. §§ 301.501 and 301.502 (later renumbered as §§ 301.301 and 301.302). Plotkin sought a ruling from the District Office of Internal Revenue Service at Newark, New Jersey, which concluded that Plotkin's notices did not comply with the regulations, particularly § 301.502(7), because they completely omitted three specific and mandatory statements set out verbatim in sub-section (7), paragraphs A, B and C, which cover the tenants' rights to examine the documents supporting the proposed rent increase, their rights to consult with the landlord as to the basis for the proposed increase, and their rights to have the landlord verify the truth of his supporting statements and facts and to make the representation that the increase is not in violation of the Economic Stabilization Regulations.[1]

Plotkin appealed the decision of the District Office to the I.R.S. District Stabilization Manager, and thence to the Price Commission, both of which, in turn, affirmed the ruling of the District Office. He then, on December 5, 1972, filed, pro se, what he entitled an "action for Declaratory Judgment," seeking a declaration by the district court that the Price Commission's statement of policy published in the New York Times on December 23, 1971 was legally effective

---

1. § 301.502(b)(7)(A), (B) and (C) read as follows:

"(A) You have the right to examine the documentation which supports this proposed rent increase in order to satisfy yourself that the proposed rent increase is in accordance with the rent regulations prescribed by the Price Commission. This documentation is located at . . . . . . . ., and may be inspected upon request between the hours of . . . . . . through . . . . . . on . . . . . . (specify days of the week).

(B) If you do not understand the basis for this increase or believe that the increase is not allowable under the rent regulations of the Price Commission, advise us and we will arrange a suitable meeting time with you at a location convenient to your residence to discuss the proposed increase and explain its justification.

(C) It is hereby declared under the penalties of perjury that the foregoing statements and facts are true to the best of my (our) knowledge and belief; and that the increase in your rent is not in violation of the Economic Stabilization Regulations."

and binding, and that, in any event, the notice requirements of 6 C.F.R. § 301.-502(7) were substantially complied with. This action was Docket Number Civil 241572 in the United States District Court for the District of Columbia; and it is, on appeal, in this court Docket Number DC–10.[2] The Government moved to dismiss the complaint on the grounds that (1) it was not in compliance with Rule 8(a), F.R.C.P., which provides that a complaint shall be "a short and plain statement of the claim showing that the pleader is entitled to relief . . .;" (2) that the action was moot; and (3) that the complaint failed to state a claim upon which relief could be granted. The district court granted the Government's motion, and we affirm.

■ Plotkin's reliance upon the newspaper report of the Price Commission's statement of policy on December 23, 1971 and his effort to comply with what he conceived the implementation of that policy to be, did not relieve him of the duty to follow 6 C.F.R. § 301.502, which was binding upon him. At no time in the history of this case (DC–10) did Plotkin give notice in the precise mandatory form, demanded by this section. He suggests that the notice he did send was mailed a day or so ahead of the publication of the regulations in the Federal Register on December 30, 1971, and therefore preceded its effective date, and that the notice he gave substantially complied with the terms of § 301.-502(b)(7).

■ There is no valid argument that appellant escaped the notice regulations by fortuitous timing. Even if it were true that appellant mailed his notice before the regulations were adopted or published in the Federal Register, they would still apply to him. The "transac-tion" which must occur after December 28, 1971, for the notice regulations to apply is the rental increase, not the advance notice thereof. And the rental increases he sought to notice were to become effective February 1, 1972. See Price Commission Ruling 1972–41, February 8, 1972 (37 F.R. 3061, February 11, 1972).

■ Section 301.502 goes on to provide that the lessor "must notify the lessee of the proposed rent increase at least 30 days before the date it is to become effective," and that this "notice shall be in writing and shall set forth," inter alia, the three statements set out in § 301.502(b)(7)(A), (B) and (C). That not only the substance but also the precise words of the three statements are required is made clear by the fact that § 301.502(b)(7) does not explain the statements in general terms but actually sets them out word for word just as they must appear—complete with first person pronouns for the lessor and second person for the lessee. The statement set out in § 301.502(b)(7)(A) includes appropriate blanks to be filled in to meet each case, clearly indicating that the only language latitude afforded the landlord under the notice regulation is in the accurate tailoring of the four blank spaces to the individual circumstances.[3] It is admitted by appellant that he failed to comply with the notice requirements of the regulation, and in particular did not include the three statements required by § 301.-302(b)(7).

We hold that the notice of December 30, 1971, which Plotkin gave, was not substantial compliance with the regulation in the first case, i. e. DC–10; and the ruling of the district court in granting the motion to dismiss is affirmed.

2. On July 19, 1973, Chief Judge Tamm ordered this case (DC–10) consolidated with another declaratory judgment action brought by the appellant Plotkin against Grayson, et al. on December 26, 1972 and carrying docket number 2548–72 in the United States District Court for the District of Columbia; this second case was docketed in this court as # DS–11, which will be taken up and discussed below.

3. This is not to say that minor or typographical errors, which leave the full substance of the notice clear and unequivocally understandable, would violate the holding of strict compliance.

There was and is no issue as to granting leave to the plaintiff to plead over again or file a substituted complaint because, by Executive Order 11695 promulgated by the President on January 11, 1973 and 6 C.F.R. § 130.32(a)(2), made pursuant to the Order, rents for all residential and nonresidential real property were exempted from control under the Economic Stabilization Program. The appellant, Plotkin, could thereafter establish rates for rental of his dwelling units at whatever amounts he may have chosen.

*Docket Number DC–11*

Although the increases in rent with which this case is concerned, relate to the same premises as those involved in the first case (i. e. DC–10), the present case is separate and distinct from DC–10 and must be so treated.

The DC–11 declaratory judgment action was brought by Plotkin, acting pro se, on December 26, 1972 and was docketed in the lower court as Civil No. 2548–72. From the allegations of the complaint, which, for the purpose of this motion to dismiss, must, in their factual content, be considered to be true, it is possible fairly to summarize the course of events which led up to the bringing of this declaratory judgment action.

On June 29, 1972, Plotkin gave notice to his tenants that their rent would be increased, effective on and after August 1, 1972, and he alleges that in so doing he meticulously followed the provisions of 6 C.F.R. § 301.502(7). Evidently a dispute arose with some of the tenants; and on July 1, 1972 Plotkin requested, in writing, a ruling of the Internal Revenue Service which would assure him that his notice was in proper form and properly served. The IRS initially ruled on July 13, 1972 that the notice failed to comply with the regulations, but on July 31, 1972, it rescinded that ruling and held that the notice did satisfy the provisions of § 301.502(7). The IRS, however, left in a somewhat indeterminate state, its approval of the amount of the increase while it awaited some additional records and documents from Plotkin. Within 10 days of the initial ruling denying Plotkin's appeal and leaving the justification issue unresolved, he took a protective appeal to the Price Commission on both points. Plotkin alleges that the ruling of the Price Commission on November 6, 1972 did no more than say that "enforcement of its policy" was in the hands of "the Internal Revenue Service." The IRS, however, said the whole matter had been referred to the Chairman of the Price Commission and one Wood, Assistant Attorney General.

There also arose several actions and proceedings by the tenants, or by various public officials on the behalf of the tenants, against Plotkin in the state courts and before administrative officials. The complaint in this action is heavily laden with references to and descriptions of phases of proceedings in other courts and tribunals and charges by Plotkin of fraud and conspiracy by various public officials against him. He also alleges persecution, deceptive practices and harsh treatment at the hands of some of them. Plotkin charges the defendants, all of whom are federal officials, with either encouraging or engineering these wrongful proceedings and acts of harassment.

It is evident that by December of 1972 the appellant Plotkin was engaged on many fronts in numerous disputes; and, he alleges, he could get no relief from the IRS and the Price Commission. In an endeavor to consolidate them in one action in a single forum, he gathered together his bag full of troubles and, labeling it a declaratory judgment action, filed it in the United States District Court for the District of Columbia, there to be sorted out and put to rights. The district court examined the 69 paragraphs of the complaint and concluded, not without reason, that it was not in conformity with Rule 8(a), F.R.C.P., which requires that a complaint be "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." On this ground and also because the complaint

failed to state a claim entitling the plaintiff to relief, the district court granted the defendants' motion to dismiss.

We agree with the conclusions and ruling of the district court, but in order more fully to emphasize the necessity of following the procedures expressly provided by the Economic Stabilization Act, we particularly point out that, in the circumstances of this case, a declaratory judgment action does not lie.

From the record before us it must be assumed that the written notice given by the landlord Plotkin to his tenants fully complied with the procedural requirements of § 301.502. The defendants-appellees have not denied this or pointed out anything to the contrary. Moreover, it is confirmed by the July 31, 1972 ruling of the IRS, following the irregular procedure initiated by Plotkin, that the notice was valid. This means that once Plotkin had given the proper notices to his tenants, the orderly procedure set out in paragraphs A, B and C of § 301.-502(7) immediately came into operation.

■■ Under the regulatory scheme the tenants were not entitled to withhold the rent increases sought which they did on the ground that they were not justified by the rent regulations. Instead, they were required to pay them and, as the notice itself had directed, seek their remedy through an examination of the available documentation and discuss the matter with appellant. If they then believe that their rent increases were invalid, or could be attacked on other grounds, they, *the tenants, not* the *appellant* could seek IRS review; but meanwhile they were required by law to pay the rental increases. § 301.302, 37 F.R. 13226 (July 4, 1972); see also § 301.502 (C), 36 F.R. 25387 (December 30, 1971). Assuming proper notice, the regulations

clearly contemplate that the lessor would be entitled to the usual summary procedures under local state law for nonpayment of rent, and that it would be no defense for lessees that the increase was otherwise invalid under the rent regulations. In short, appellant-landlord's proper remedy for nonpayment of the August 1, 1972, rent increase, was not through the channels of the IRS, but in the local courts. It was up to his *tenants* to pursue IRS and Price Commission reviews.

The landlord, Plotkin, had, in the regulations, a clear recourse to a remedy. He chose not to follow it and consequently has become mired in purposeless controversies. This complaint for a declaratory judgment against federal officials, who have brought no actions against him under the Economic Stabilization Act, contains neither the proper parties nor the pertinent allegations on which to adjudicate the issues under the Act between him and his tenants, relating to a justification for the proposed rent increases of August 1, 1972.[4]

This principle is of great importance to the regulatory structure governing these kinds of cases. It is the lessees, not the Government, much less the lessor, who are to be the effective policemen in the first instance. They can usually be counted on, because of their interest, to attack proposed rent increases which may be questionable. On the lessees' shoulders fall much of the administrative burden which would otherwise rest on the Government. To permit any lessor a series of appeals through the IRS, and then a declaratory judgment in the United States District Courts, just because he feared that his tenants *might* contest the substantive validity of his rental increase or to compel the Commission to give him an advisory opinion would seriously interfere

4. There is nothing in this case to preclude the landlord, Plotkin, from seeking to collect in the state courts the unpaid increase in rent for the months subsequent to August 1, 1972 in which the tenant occupied the premises; nor, in the event that any tenant has reason to believe that a violation of Part 301 of Chapter III of Title 6 of C.F.R. has taken place, is he prevented from making contact with "the nearest Office of the Internal Revenue Service." § 301.502(e).

with the intended enforcement procedure by placing a potentially heavy and unnecessary administrative workload where it was not intended to fall, all for the purpose of affording the lessor a benefit marginal, at best, because under the regulation he would be entitled to collect the rental increase from the date it became operative. *See* Public Serv. Comm'n v. Wycoff Co., 344 U.S. 237, 243–247, 73 S.Ct. 236, 97 L.Ed. 291 (1952). The Court said at 246, 73 S.Ct. at 241:

". . . the declaratory judgment procedure will not be used to preempt and prejudge issues that are committed for initial decision to an administrative body or special tribunal any more than it will be used as a substitute for statutory methods of review."

Under these circumstances, the District Court's dismissal of the case is also affirmed as a sound exercise of its discretion in accordance with this principle applicable to declaratory judgment actions.