Charles LYMAN et al., Plaintiffs-Appellants,

v.

UNITED STATES of America et al., Defendants-Appellees.

Nos. 2-12, 2-16.

Temporary Emergency Court of Appeals, Aug. 5, 1974.

---

Jerome M. Kay, New York City, for appellants.

Mark F. Hughes, Willkie Farr & Gallagher, New York City (Churchill Rodgers, Vincent R. FitzPatrick and William G. Scarborough, New York City, on the brief) for appellee, Metropolitan Life Ins. Co.

Winston E. Miller, Dept. of Justice, Washington, D. C. (Carla A. Hills, Asst. Atty. Gen., Stanley D. Rose and Marvin L. Coan, Washington, D. C., with him on the briefs) for appellee, U. S.

Before HASTIE, ANDERSON and JOHNSON, Judges.

PER CURIAM:

In 1943 the Metropolitan Life Insurance Company entered into a long term contract with the City of New York, pursuant to the Redevelopment Companies Law of the State of New York, under the terms of which the Metropolitan built and still owns Stuyvesant Town, a large housing development in the City of New York. The plaintiffs, present and past tenants of Stuyvesant Town, brought this action under Phase II Regulations under the Economic Stabilization Act,[1] challenging the ruling of the Price Commission which decided that Stuyvesant Town was within the exemption for rental controlled units as provided in 6 C.F.R. § 301.106, which freed from Federal Price Commission rent controls political subdivisions such as counties, cities or towns, "in circumstances where rents are adequately supervised by some other government agency, federal, state or local," Rykus v.

---

1. Economic Stabilization Act of 1970, 84 Stat. 799 (1970), as amended 85 Stat. 743 (1971); 6 C.F.R. § 301.106.

New York City Housing Authority, 468 F.2d 215, 217 (Em.App.1972), so that the burden on the Price Commission could be lessened and unnecessary duplication of effort could be prevented.

The appellants raised two major objections below, first that the Price Commission violated its own information regulations, § 301.106(a) and (c), by making its decision without securing the necessary information from the appropriate local agency, the City's Board of Estimate, by relying instead on a letter from Metropolitan, and second, that Stuyvesant Town was not "rent controlled housing" within the meaning of § 301.-106(b). The district court upheld the Price Commission's decision, and rejected both arguments, first on December 12, 1973, and again after a further hearing on March 25, 1974. On appeal, appellants raise the same two grounds, and in addition they also raise the procedural objection that the district court's decision on the merits could not validly have been made on the motions then before it, and consequently the appellants were deprived of the opportunity to make their legal arguments. We find these contentions unpersuasive and affirm the judgment of the district court.

 While there are numerous Supreme Court opinions holding that an agency cannot violate its own regulations where their underlying purpose is to protect personal liberties or interests,[2] this is not such a case. Unlike the regulations in Plotkin v. Grayson, 485 F.2d 1243, 1244 (Em.App. 1973), which were designed to protect certain rights of *tenants* to enable them to assess, and to receive assurances about, proposed rent increases by their landlord, the rent control exemption here was designed to permit the *Price Commission* "to avoid unnecessarily burdening" itself—as it would if it allowed "the creation of a two-tiered system of rent control where one tier already existed," *Rykus, supra,* 468 F.2d at 217. The information requirements in § 301.-106(c) were intended to enable the Price Commission to make that choice.[3]

As the letter submitted by Metropolitan gave the Commission in substance the information required by § 301.-106(c), and since Metropolitan offered in the letter to cooperate if the Commission wanted more information and because the Commission's own decision discloses that it was "aware of the salient factors even though no papers were filed by the Board," the Commission can properly be excused under the rule of American Farm Lines v. Black Ball, 397 U.S. 532, 537, 90 S.Ct. 1288, 1291, 25 L. Ed.2d 547 (1970), from its "failure . . . to require strict compliance with its own rules." As these were not "rules . . . adopted to confer important procedural benefits upon individuals," the Price Commission was "entitled to a measure of discretion," "not reviewable except upon a showing of substantial

---

2. See, e. g., Yellin v. United States, 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963) ; Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959) ; Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed. 2d 1403 (1957) ; Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954) ; Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951). There are numerous similar holdings as to personal procedural rights in the Courts of Appeals. See, e. g., Donham v. Resor, 436 F.2d 751 (2d Cir. 1971) ; United States v. Leahey, 434 F.2d 7 (1 Cir. 1970) ; United States v. Heffner, 420 F.2d 809 (4 Cir. 1970) ; Smith v. Resor, 406 F.2d 141 (2 Cir. 1969) ; Hammond v. Lenfest, 398 F.2d 705 (2 Cir. 1968).

3. Indeed appellants recognize this purpose in their brief, and § 301.106(d) reflects this purpose by reserving in the Price Commission "the right . . . to impose . . . different requirements on any person reporting under paragraph (c) of this section" in order "[t]o ensure that the goals of the Economic Stabilization Program are attained . . . ." But appellants claim an additional purpose was to allow the local agency the option of electing its own or the federal control scheme. Since the Board of Estimate is not trying to enforce the selection of federal controls here, it is unnecessary to decide whether the local agency's or the Price Commission's choice would prevail if each sought to rely on the controls of the other.

prejudice to the complaining party," in administering rules "intended primarily to facilitate the development of relevant information for the Commission's use in" making its decision, *id.,* at 538–539, 90 S.Ct. at 1293. See also Municipal Elec. Util. Ass'n. of Alab. v. FPC, 158 U.S.App.D.C. 188, 485 F.2d 967, 973 (1973); Municipal Light Boards v. FPC, 146 U.S.App.D.C. 294, 450 F.2d 1341, 1347–1348 (1971), cert. den., 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 445 (1972); Associated Press v. FCC, 145 U.S.App.D.C. 172, 448 F.2d 1095, 1104 (1970).[4]

■ Here, as was true in *Rykus, supra,* at 468 F.2d at 217, there is no question but that the first two requirements for "rent controlled housing" under § 301.106(b)(2) are met, that is, financial assistance from, but not ownership by, a governmental agency. *Rykus* likewise establishes the standard for the requisite degree of control, which is the third essential. The 1943 contract between Metropolitan and the City provided for a maximum average rental of $14 per room per month, except upon application to the Board of Estimate and upon demonstration, by a preponderance of credible evidence, that increased rentals would be necessary to provide the annual, cumulative sum for interest, amortization and dividends, equal to but not greater than six percent of the total final cost of the project. These control conditions are even more stringent than those in *Rykus,* where, for example, prior local agency approval of proposed rent increases was not required.

■ Even assuming, arguendo, that appellants did not have an opportunity to present their full arguments before the district court's decision on December 12, 1973, that opportunity came and was fully utilized at the later hearing on March 25, 1974, when the district judge heard the arguments made by appellants, noted that some had not been presented before, and clearly stated that his conclusion on the merits remained the same. The record discloses that, prior to the March 25 hearing, appellants had themselves moved for judgment on the merits, and that at that hearing their attorney indicated that his concern about the premature nature of the December 12 decision was not his inability to present evidence on disputed issues of fact but rather his lack of opportunity to brief the legal issues fully. He conceded, however, that this omission was rectified by the filing of his brief for the March 25 hearing.

The judgment of the district court is affirmed.

---

4. Although it cited *Service* and *Accardi,* in passing, for the proposition that a governmental agency cannot act contrary to its own regulations, Baldwin County Elec. Mem. Corp. v. Price Commission, 481 F.2d 920 (Emp.App.1973), cert. den., 414 U.S. 909, 94 S.Ct. 230, 38 L.Ed.2d 147 (1973), is not apposite here. That case turned on the circumstance that the majority found the regulation "silent on the point in issue between the parties," *id.,* at 923. Since there was no violation of the regulations it was not necessary to analyze their purpose to ascertain if the non-compliance was justifiable.